DEE, J.
The relation in which a sheriff to whom the estate of a decedent is committed for administration, *stands to the estate has been materially changed in the course of the legislation upon this subject. Under former laws the estate was in effect administered by the court, and the sheriff was but the officer of the court charged with the execution of its orders made in the progress of the administration. See Acts of 1705, ch. 10, | 10, 11; Acts of 1748, ch. 3, l 2; 1785, ch. 61, § 55. At the revisal of 1819, a general provision was introduced, by which the sheriff in such case, without giving any other bond or taking any other oath than those already given and taken, is declared to be the administrator (with the will annexed if there be a will), and entitled to all the rights and bound to perform all the duties of such administrator. 1 Rev. Code 1819, ch. 104, $ 67. And the same provision is retained in the present Code, ch. 130, § 10. He thus stands on the footing of any other administrator, subject only to the power reserved to the court to revoke the order committing the estate to him, and allow some other person to qualify as executor or administrator. While his powers continue he may collect the assets, discharge the debtors of the estate, and pay off all claims against it: he may sue and be sued as such administrator; like any other is bound to render an account of his administration, and is entitled to the same allowances for his expenses and services. In short, every right and everjr duty pertaining to any other administrator is thus devolved upon him; and upon general principles and by all analogy, it should seem that before his office can be taken away from him and given to another, he should have notice of the intended application for that purpose, in order that he may make any proper defense, and may also conform his own arrangements with reference to the expected termination of his powers. Eor as a part of his duty to defend the estate committed to him, he may and' should resist the efforts of 'x‘a.ny unfit and unsuitable person to get possession of it, by causing his powers to be revoked and obtaining administration for himself. He is concerned to see that adequate security be given by his successor, and he is better prepared than any other to inform the court as to the amount that should be required; and he should know when his powers terminate and those of that successor come to replace them. If he have no notice of the intended action of the court, he may proceed in utter ignorance of what it may have done, to make arrangements with creditors and others, which, being utterly void because his powers had been revoked, may compromise both him and them, ' and occasion serious loss and inconvenience to innocent parties.
It is urged that the act of assembly which reserves to the court the power to revoke the administration committed to the sheriff, and to grant it to some other person, contains no provision for a citation or notice to the sheriff when an application is to be made to the court to exercise that power; and that no such citation or notice is necessary, because the sheriff has no rights or interest in the subject, and cannot resist the revocation of his powers and the grant of administration to another jierson,' which the court itself has no discretion to refuse.
It is true there is no provision for any citation or summons before the court shall act. Nor is there any in the case under the fifth section, where administration has been granted to a creditor or some other person, or a will has been admitted to record after a previous grant of administration, ánd a distributee who shall not have before refused shall apply for administration ; and yet in these cases it can scarcely be supposed that a court would be justified in displacing an administrator regularly appointed without his1 having been first cited or in some way notified to appear and defend his interest. So in a case in which *a surety seeks to be relieved of his *516 suretyship, he must give the administrator due notice of his intended application to the coutt, without proof of which the court will not make the preliminary order requiring the administrator to give a new bond. And there can be no reason why a proper notice should not be given in the case of a sheriff administrator. He has, as we have seen; rights and an interest in the subject the same as any other administrator. It is not a matter of course that the court will revoke the grant to the sheriff and allow any other person to qualify as administrator. The words in the act of 1819 are, “The court, however, shall have power, at any time afterwards, to revoke such order” (committing the estate to the sheriff), “and to grant letters testamentary or letters of administration to any person entitled thereto-” Those of the present act (Code, p. S42, 4 10,) are, “The court may, however, at any time afterwards, revoke such order and allow any other person to qualify as executor or administrator.” But these terms “any other person” must necessarily have some limitation, and this is to be found only in the sound discretion of the court, to which must be referred the fitness or suitableness of the party applying, and the time and circumstances of his application ; and touching these, the acting administrator should have an opportunity to be heard.
Nor is the case altered by the fact supposed to be proved in this cause, that the order committing the estate to the sheriff, was made some few days before the expiration of three months from the death of the testator. If the order made thus prematurely were ipso facto void, it might be otherwise. I think however that it is voidable only and not void. The fourth section of the act in effect reserves the right of administration to distributees exclusively for thirty days after the death of the decedent; yet if the court should *chance to grant administration to a creditor or some other person before the expiration of the thirty days, it will scarcely be seriously contended that such a grant would be absolutely void; though it certainly would be erroneous and voidable. Whether in either case, the order for administration was made at a proper time or prematurely, is not such a question of j urisdlction as may be raised collaterally in another action or proceeding. The jurisdiction of a County court upon this subject is a general jurisdiction conferred by the statute ;to grant probat of wills, and to hear and determine suits and controversies testamentary and concerning administrations. Code, ch. 122, 4 23, p. 519; ch. 130, 4 4, p. 541. It is a court of record, and its judgments or sentences cannot be questioned collaterally, if it have jurisdiction of cases ejusdem generis. Where it has jurisdiction over that class of cases, whether the court erred qr not in determining that the facts were proved upon which the power to grant administration in the particular case depended, is not to be enquired into collaterally. It must be supposed to have enquired into and decided upon those facts at the time of making its order, and its decision if erroneous, would be voidable only and not void. Accordingly under the influence of these considerations, it has been held in this court that a grant of administration by the court of a county not authorized by the facts of the case to make such grant (the decedent having had no residence, and having left no estate of any kind in the county by the court of which the grant was made), was not void but voidable only; overruling previous decisions of the General court to the contrary in Barker’s Case, 2 Heigh 719; and Case of Robinson’s Estate, November term 1828, cited in Barker’s Case. Eisher v. Bassett, 9 Heigh 119; Burnley’s Reps. v. Duke, 2 Rob. R. 102. See also Schultz v. Schultz, 10 Gratt. 358, 377; Cox v. Thomas, 9 Gratt. 312.
*This case is plainly within the principles of the cases just cited. Eor if a grant of administration by a County court which had no jurisdiction or authority to make such grant upon the facts of the particular case, is yet voidable only because the court had a general jurisdiction in cases ejusdem generis, so the commitment of an estate to the sheriff for administration by a court which not only had jurisdiction in cases of that class, but also had full jurisdiction in the particular case to grant administration to some suitable person, would be but voidable and not ipso facto void even if the court had erred upon the facts in making the order at the time it was passed. And great inconvenience and embarrassment would be occasioned by a contrary doctrine. The acts of the sheriff would be of course invalid. He would incur all the liabilities of an executor de son tort, and innocent persons dealing with him upon faith of the authority conferred by a court of record, and possessing a general jurisdiction over similar cases, and authority to designate an administrator in the very case, might be subjected to great embarrassment and serious loss. While on the other hand no injury can result from treating the authority of the sheriff administrator as voidable only. His acts would be good until it be revoked; there would be a representative of the estate during the whole period; purchasers of the property belonging to the estate would be protected; the debtors to it might safely pay what they owed, and creditors and distributees would have all the security for the proper disposition of the proceeds which the official bond of the sheriff would afford.
Regarding, then, the authority of a sheriff administrator as voidable only and not void, even though prematurely conferred by the court in point of fact, he should have notice of the intended application to revoke it, just as in the case of an appointment of a *creditor as administrator before the expiration of the thirty days within which the right to administer is reserved to distributees exclusively. In either case, if the previous order of admin *517 istration be assailed upon the allegation that it was prematurely made, the party should have the opportunity to contest the fact.
I think therefore the County court did not err in overruling the motion of the appellee, as it does not appear that any citation or summons had been issued or served upon the sheriff, nor that he was present in court when the motion was made, nor that he has in any manner waived the benefit of such citation; and in this view it is rendered unnecessary to decide any of the other questions raised in the argument of the cause. I think, however, out of abundant caution it would be proper to amend the judgment by declaring it to be without prejudice to any future motion which the appellee may be advised to make to the same effect upon a proper citation or summons.
I am of opinion therefore to reverse the judgment of the Circuit court, to amend that of the County court in the manner before stated, and as amended, the same to affirm.
MOJSTCURE, J.
I think it is at least very doubtful whether the order of the County court of Henrico, committing the estate of James O’Brien to the sheriff for administration, was not a void order, less than three months having elapsed between the death of the testator and the date of the order. When it was made, neither the County court of Henrico, nor any other court of probat, had any power to make such an order; any more than if O’Brien had been then alive. In this respect the case differs from that of Fisher v. Bassett, 9 Leigh 119. There, when the grant of administration on Robinson’s estate was made to Scott, some court had power to make the grant; and the *Court of Hustings of the city of Richmond having taken cognizance of the subject and made the grant, the order of that court was considered by this to be voidable only, and valid until revoked or reversed. This case seems to be like that of Wales v. Willard, 2 Mass. R. 120. An act of that state provides that administration shall not be originally granted upon the estate of any deceased person after the expiration of twenty years from his death. The administration in that case was originally granted after the intestate had been dead twenty years. Parsons, C. J., in delivering the opinion of the court, said, “This administration, it was not competent for any judge of probat to grant; but it is a case in which it is expressly provided by the statute from which he derives his authority, that no administration shall be granted. It is not therefore the erroneous exercise of his judgment, but it is an assumption of power against law; and the grant is, ipso facto, a nullity'.”
But whether this be so or not, I am of opinion that Priddy was entitled to the administration when he applied for it, and that there was no necessity for any notice of the application to the sheriff; but that the order committing the estate to the latter would, by a grant of administration to the former, have been ipso facto revoked. In England, the person entitled to distribution is entitled to the administration; and though the ordinary may appoint another person administrator, yet he can only do so after the person entitled to the administration has refused it. That person must be cited to accept or refuse before there can be any valid grant to another. And non vocatis jure vocandis, is a sufficient ground for revoking a grant to another. In Virginia, the distributee, if a fit person, is also entitled to the administration. But there is this difference between the law of England and the law of Virginia; that by the latter, if no distributee apply *for administration within thirty days from the death of the intestate, the court may grant administration to one or more of his creditors, or to any other person, without first citing the distributees to accept or refuse. Code, ch. 130, $ 4, p. 541. The right of the distributees, however, is not lost by such grant to another, but is carefully preserved to them by law; which provides, that “if a will of a decedent be afterwards admitted to record, or if after administration is granted to a creditor, or other person than a distributee, any distributee who shall not have before refused shall apply for administration, there may be a grant of probat or administration in like manner as if the former grant had not been made; and the said former grant shall thereupon cease. ” Id. $ 5. This law, it will be observed, requires no notice or citation to be given to the original administrator; and it is obvious, I think, that one was contemplated. The words, 1 ‘and the said former grant shall thereupon cease,” indicate that the new grant is, ipso facto, a revocation of the old. The original administrator is like a curator; or an administrator durante minori actate, or durante absentia; and his powers terminate on the qualification of the rightful administrator. Surely, if a will be afterwards, admitted to record, and the executor obtain probat, there is no necessity for citing the original administrator, nor expressly invoking his grant of administration. This was decided in the case of Hunt v. Wilkinson, 2 Call 49. The same principle applies to a subsequent grant of administration to the party entitled thereto. The same clause which provides for the case of a subsequent recordation and probat of a will, provides for the case of a subsequent grant of administration. In each case it is declared that the former grant shall thereupon cease; and the clause must have the same construction in regard to each.
I do not think there is any substantial difference ^between the old law under which Hunt v. Wilkinson was decided, and the new. It is true the old law uses the word “shall,” and the new law the word “may;” seeming, at first view, to indicate, that while under the old the duty of the court to grant administration to the distributee was imperative, under the *518 ñew' it was merely discretionary. But I think no change was designed by the legislature, and that the word “may,” in the new law, has the same meaning with the word “shall,” in the old. Certainly, the court under the new law has no right to refuse probat to the executor, being a fit person, if a will be recorded; and it can have no more right to refuse administration to a distributee, being a fit person; the same clause of the law providing for each case. ' The effective words in the old law, that there shall be a grant of administration to the distributee, “in like manner as if the former had not been obtained,” are substantially repeated in the new. And there are in the new these additional words, not contained in the old, “and the said former grant shall thereupon cease;’ ’ which makes the meaning of the legislature still more plain.'
It is provided .by (j 10, p. S42, that when an estate is committed to the sheriff for administration, “the court may, at any time afterwards, revoke such an order, and allow any other person to qualify as executor or administrator.” If the grant of administration to a distributee under l 5, is, ipso facto, á revocation of the original grant to another person under ¡ 4, a fortiori, such grant to a distributee is, ipso facto, a revocation of an order committing the decedent’s estate to the sheriff, formerly, the sheriff, to whom an estate of a decedent was committed, was not a full administrator, but little more than a curator ad colligendum bona defuncti. He was the mere officer of the court, and administered the estate under'its order, and on equitable principles. He has since been declared by ' *law to be an administrator. But he does not now stand on precisely the samé footing with a person appointed administrator under § 4; and may be displaced by the subsequent appointment, not only of a distributee, but of any other person. If there be no good reason for requiring any other administrator to be cited before his grant of administration is revoked, there is certainly less for requiring the sheriff to be cited; he being the officer of the court, presumed to be always in attendance upon it, and to have notice of its proceedings. It is true, the administration of the sheriff continues after his term of office expires; but it' rarely happens that administration is granted to another after that period. In this case the application was made at the term of the court next succeeding that at which the estate was committed to the sheriff, and during the latter’s term of office; and there can be no doubt but that he had actual notice of the application. I believe it has, been the general, if not the invariable,'practice of the courts of probat to grant administration in such cases without notice to the sheriff.
It is the dut3r of the court of probat to take care that a party to whom administration is' granted is entitled thereto ; and it may, if it see fit, cause the original administrator, or a sheriff committee, or any of the next of kin, to be cited to show cause against it. But it is under no imperative obligation to do so. Any person interested may voluntarily appear and resist the application of a distributee for administration ; and will thus become a party to the proceeding and entitled to appeal from the sentence, or obtain a supersedeas thereto. The sheriff in this case might have appeared and become a party; and so might Mitchell and wife. The former did not so appear; no doubt because he did not care for the administration. The latter did appear and become a party; and the application was therefore refused.
*The contest in the County court being between Priddy and Mitchell and wife, and not Priddy and the sheriff, I think that Mitchell and wife, and not the sheriff, should have been made parties to the writ of supersedeas; and that the sheriff had a right to have the' writ quashed. But he made no motion for that purpose. On the contrary, the case was tried upon its merits in the Circuit court, and was decided in favor of Priddy. And now the sheriff seeks in this court to reverse the judgment of the Circuit court. I think that Priddy is entitled to the administration, being the only distributee who applied, and it not appearing that he is unfit for the office; on the contrary, it appearing that he had the confidence of the testator, in being appointed his executor and otherwise, and was the choice of a majority of the parties in interest. I also think that while the sheriff was an improper party to the writ of supersedeas, his proper remedy was by motion to quash it; and that if there be any error against him of which he has any cause of complaint, or actually does complain, it is only as to costs; which are not sufficient to give this court jurisdiction.
I am therefore for affirming the sentence of the Circuit court.
The other judges concurred in the opinion of Bee, J.
Judgment reversed.